**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MCARTHUR L. AARON,

        Petitioner,

v.                                                    Case No. 03-CV-74744-DT

CARMEN PALMER,

        Respondent.

_____/

**ORDER ADOPTING REPORT AND RECOMMENDATION**
**AND**
**DENYING PETITION FOR WRIT OF HABEAS CORPUS**

On October 21, 2003, the court referred to United States Magistrate Judge Paul

J. Komives Petitioner McArthur L. Aaron's November 25, 2003 petition for a writ of

habeas corpus under 28 U.S.C. § 2254 for a report and recommendation pursuant to 28

U.S.C. § 636(b)(1)(B).  The magistrate judge issued his report and recommendation on

April 19, 2005, concluding that this court should deny Petitioner habeas relief.

Petitioner filed four objections to the report and recommendation on June 10, 2005 and

Respondent filed a written response to these objections on June 23, 2005.  For the

reasons set forth below, the court rejects Petitioner's objections, adopts the April 19,

2005 report and recommendation, and denies the petition for a writ of habeas corpus.

**I.  BACKGROUND**

Petitioner Aaron is a state prisoner, currently confined at the Riverside

Correctional Facility in Ionia, Michigan.  On October 3, 1997, a jury convicted Petitioner

on one count of second degree murder in violation of Michigan Compiled Laws ("MCL")

§ 750.317, one count of assault with intent to commit murder in violation of MCL §

750.89, one count of assault with intent to rob while armed in violation of MCL § 750.83, and one count of possession of a firearm during the commission of a felony in violation of MCL § 750.227b.  Petitioner appealed his convictions to the Michigan Court of appeals, raising various claims.  (*See* R&R at 3-6.)

The Michigan Court of Appeals affirmed Petitioner's convictions on June 2, 2000, finding no merit in any of Petitioner's claims.  *See People v. Aaron*, No. 210010, 2000 WL 33418993 (Mich. Ct. App. June 2, 2000).  The Michigan Supreme Court denied Petitioner's subsequent application for leave to appeal by standard order.  *See People v. Aaron*, 623 N.W.2d 596 (Mich. 2001).

Petitioner then filed a motion for relief from judgment in the trial court pursuant to Michigan Court Rules 6.500–6.508.  In this motion, Petitioner argued he was denied a fair trial when the prosecutor knew or should have known about false testimony offered by witnesses at trial.  On December 12, 2002, the trial court denied this motion, finding that the claim was without merit and that petitioner had failed to establish good cause to excuse his failure to raise this claim on direct appeal as required by Michigan Court Rule 6.508(D)(3).  Petitioner then sought leave to appeal the December 12, 2002 ruling to the Michigan Court of Appeals.  The Michigan Court of Appeals denied Petitioner's motion to waive fees and ordered that he pay the filing fee within 21 days of the court's order.  *See People v. Aaron*, No. 247119 (Mich. Ct. App. Apr. 2, 2003).  On May 8, 2003, the court of appeals dismissed Petitioner's appeal for because he failed to pay the filing fee.  The Michigan Supreme Court then denied leave to appeal, and Petitioner filed the instant petition for a writ of habeas corpus on November 25, 2003.

2

## II.  STANDARDS

### A.  Habeas Relief Pursuant to 28 U.S.C. § 2254

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner

filed his habeas petition after the AEDPA's effective date.  *See Lindh v. Murphy*, 521

U.S. 320, 336 (1997).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

In *Williams v. Taylor*, 529 U.S. 362 (2000), the United States Supreme Court

undertook a detailed analysis of the correct standard of review under the AEDPA.

According to the Court:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied – the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing principle from this

Court's decisions but unreasonably applies that principle to the facts of
the prisoner's case.

*Id.* at 412-13 (O'Connor, J., delivering the opinion of the Court on this issue).

In evaluating a state court decision under the "unreasonable application" clause,
the Supreme Court further stated that a federal habeas court "should ask whether the
state court's application of clearly established federal law was objectively
unreasonable." *Id.* at 411. "Under § 2254(d)(1)'s 'unreasonable application' clause,
then, a federal habeas court may not issue the writ simply because the court concludes
in its independent judgment that the relevant state-court decision applied clearly
established federal law erroneously or incorrectly. Rather, that application must also
be unreasonable." *Id.*

The Supreme Court also clarified that the phrase "clearly established Federal
law, as determined by the Supreme Court of the United States, "refers to the holdings,
as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the
relevant state-court decision." *Id.* at 412. In determining what constitutes clearly
established federal law, therefore, a federal habeas court must look to pertinent United
States Supreme Court precedent.

Lastly, the AEDPA requires that this court presume the correctness of state
court factual determinations. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may
rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161
F.3d 358, 360-61 (6th Cir. 1998).

## B.  Review of Reports and Recommendations

The filing of timely objections requires the court to "make a *de novo*
determination of those portions of the report or specified findings or recommendations

4

to which objection is made."  28 U.S.C. § 636(b)(1).  *See United States v. Raddatz*,

447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  This *de*

*novo* review, in turn, requires this court to re-examine all the relevant evidence

previously reviewed by the magistrate to determine whether the recommendation

should be accepted, rejected, or modified in whole or in part.  28 U.S.C. § 636(b)(1);

*Bankston v. Commissioner of Soc. Sec.,* 127 F. Supp. 2d 820, 823 (E.D. Mich. 2000).

The court may receive further evidence if desired.  *Id.*

A general objection, or one that merely restates the arguments previously

presented is not sufficient to alert the court to alleged errors on the part of the

magistrate judge.  An "objection" that does nothing more than state a disagreement

with a magistrate's suggested resolution, or simply summarizes what has been

presented before, is not an "objection" as that term is used in this context.

A party who files timely objections to a magistrate's report in order to preserve

the right to appeal must be mindful of the purpose of such objections: to provide the

district court "with the opportunity to consider the specific contentions of the parties and

to correct any errors immediately."  *Walters*, 638 F.2d at 949-50.  The Supreme Court

upheld this rule in *Thomas v. Arn,* 474 U.S. 140 (1985), a habeas corpus case.  The

Supreme Court noted that "[t]he filing of objections to a magistrate's report enables the

district judge to focus attention on those issues--factual and legal--that are at the heart

of the parties' dispute."  *Id.* at 147 (footnote omitted).

Further, "[o]nly those specific objections to the magistrate's report made to the

district court will be preserved for appellate review; making some objections but failing

to raise others will not preserve all the objections a party may have."  *Smith v. Detroit*

5

*Federation of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A general

objection to the magistrate's report has the same effect as a failure to object.  The

district court's attention is not focused on any specific issues for review, thereby

making the initial reference to the magistrate useless.  The functions of the district

court are effectively duplicated as both the magistrate and the district court perform

identical tasks.  The duplication of time and effort wastes judicial resources rather than

saving them, and runs contrary to the purposes of the Magistrates Act.  *Howard v.*

*Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

### III.  DISCUSSION

### A.  Objection # 1

Petitioner first objects to the magistrate judge's recommendation to deny habeas

relief on several of Petitioner's claims that were procedurally defaulted based on his

failure to object during trial.  (*See* R&R at 8-12.)

The Sixth Circuit has recently explained the procedural default rule as follows:

Federal courts "will not review a question of federal law decided by a
state court if the decision of that court rests on a state law ground that is
independent of the federal question and adequate to support the
judgment." *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S. Ct. 2546,
115 L.Ed.2d 640 (1991).  As applied in the habeas context, this doctrine
precludes federal courts from reviewing claims that a state court has
declined to address, because of a petitioner's noncompliance with a state
procedural requirement.  *See Wainwright v. Sykes,* 433 U.S. 72, 87, 97
S. Ct. 2497, 53 L.Ed.2d 594 (1977).  "In these cases, the state judgment
rests on independent and adequate state procedural grounds." *Coleman,*
501 U.S. at 730, 111 S.Ct. 2546.  For purposes of procedural default, the
state ruling with which the federal court is concerned is the "last
explained state court judgment." *Munson v. Kapture,* 384 F.3d 310, 314
(6th Cir. 2004) (citing *Ylst v. Nunnemaker,* 501 U.S. 797, 805, 111 S. Ct.
2590, 115 L.Ed.2d 706 (1991)) (emphasis removed).

. . .

6

> We have articulated a four-part test to determine whether a habeas claim has been procedurally defaulted: (1) whether there is a state procedural rule that is applicable to the petitioner's claim; (2) whether the petitioner failed to comply with that rule; (3) whether the procedural rule was actually enforced in the petitioner's case; and (4) whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim.  *See Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986); *Clinkscale v. Carter,* 375 F.3d 430, 440 (6th Cir. 2004); *Munson v. Kapture,* 384 F.3d 310, 314 (6th Cir. 2004).

*Howard v. Bouchard*, 405 F.3d 459, 475 (6th Cir. 2005).  "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim."  *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)).

The magistrate judge noted that the Michigan Court of Appeals invoked Petitioner's procedural default by concluding that any error associated with his claims of prosecutorial misconduct was harmless pursuant to Michigan's contemporaneous objection rule as explained in *People v. Carines,* 597 N.W.2d 130 (Mich. 1999).  The magistrate judge also explained that the state court's reliance on the procedural rule is not altered by the fact that the state court also reviewed the merits of the claims for plain error.  (R&R at 10); *See Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000) ("Controlling precedent in our circuit indicates that plain error review does not constitute a waiver of state procedural default rules.")

Petitioner relies on *Ford v. Georgia*, 498 U.S. 411 (1991), arguing that the "novelty" of the rule explained in *People v. Carines*, 597 N.W.2d 130 (Mich. 1999) forecloses reliance on this procedural rule to prevent review on the merits.  In short, Petitioner argues that the magistrate judge erred in concluding that the procedural rule in *Carines* was a firmly established procedural rule in Michigan.

7

The court disagrees.  Contrary to Petitioner's objection, Michigan's contemporaneous objection rule is a firmly established and regularly followed procedural rule.  *See, e.g., People v. Duncan*, 260 N.W.2d 58, 61-62 (Mich. 1977); *Lyle v. Koehler*, 720 F.2d 426 (6th Cir. 1983).  Unlike in *Ford v. Georgia*, the procedural rule invoked by the state court in this case was not a new procedural rule; rather it was firmly established and regularly followed at the time of Petitioner's trial.  Accordingly, the court rejects Petitioner's first objection.

### B.  Objection # 2

Next, Petitioner objects to the magistrate judge's conclusion that this court should find that he is not entitled to habeas relief on his confrontation claim.  Petitioner contends that he was denied his Sixth Amendment right to confront the witnesses against him when the trial court limited the cross-examination of Nathaniel Burns regarding the consideration the state gave to Burns in exchange for his trial testimony implicating Petitioner.  The Michigan Court of Appeals rejected Petitioner's argument that the trial court erred in limiting his ability to establish on cross-examination that Burns avoided a potential *mandatory* life sentence.  The Michigan Court of Appeals explained:

> [T]he jury was informed that in return for Burns' testimony, the prosecution had dropped the first-degree murder and assault with intent to commit murder charges and that those were "life offenses;" that Burns considered the plea agreement a "very good deal" and that it was his motivation for testifying; and that pursuant to the agreement, the prosecution had promised to recommend leniency in sentencing on the assault with intent to rob charge.  Although the trial court's precluding defendant from establishing that Burns avoided a *mandatory* life sentence for first-degree murder was an abuse of discretion under *Mumford, supra* at 152-153, defendant was not precluded entirely from exploring Burns' bias and motivation derived from the plea bargain, and the difference between the jury's being informed that the sentence for first-degree

8

murder is mandatory life imprisonment, as opposed to the offense being
a "life offense," does not account for the jury's verdict of guilty.

*Aaron*, 2000 WL 33418992, at *6.

The court agrees that Petitioner is not entitled to habeas relief on his
confrontation claim.  The Sixth Amendment provides that "the accused shall enjoy the
right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.
Here, Petitioner claims a violation of his right to confront witnesses based on the trial
court's ruling that limited the scope of cross-examination of Burns.  In such cases, "the
Court has recognized that Confrontation Clause questions will arise because such
restrictions may 'effectively . . . emasculate the right of cross-examination itself.'"
*Delaware v. Fensterer*, 474 U.S. 15, 18 (1985).  The Supreme Court, however, has
explained that the Confrontation Clause does not "guarantee cross-examination that is
effective in whatever way and to whatever extent the defense might wish."  *Id.* at 20.
"So long as cross examination elicits adequate information to allow a jury to assess a
witness's credibility, motives, or possible bias, the Sixth Amendment is not
compromised by a limitation on cross-examination."  *United States v. Cueto*, 151 F.3d
620, 638 (7th Cir. 1998); *see Boggs v. Collins*, 226 F.3d 728, 739 (6th Cir. 2000).

As the Michigan Court of Appeals noted, the jury learned through trial testimony
that Burns was testifying in exchange for a dismissal of two criminal charges that were
"life offenses" and that he had received a "very good deal" from the prosecutor.  This
court agrees with the magistrate judge in that "[t]he trial court's refusal to allow counsel
to establish that the potential sentence Burns faced was a mandatory non-parolable life
sentence, as opposed to merely a generic life sentence, did not significantly limit
Petitioner's ability to explore Burns's bias and motivation in testifying."  (R&R at 22.)

9

Nor was there an unreasonable application of clearly established federal law by the Michigan Court of Appeals.  In this context, the restriction on probing the scope of the "life sentences" that Burns faced did not *significantly* limit Petitioner's ability to cross-examine and establish bias or motive for Burns's testimony.  *See United States v. Arocho*, 305 F.3d 627, 636 (7th Cir. 2002).

### C.  Objection # 3

In his third objection, Petitioner objects to the magistrate judge's recommendation that the court deny habeas relief on his identification claim.  Petitioner contends that his identification by the surviving victim, Kenneth James, was unreliable and tainted by an unduly suggestive pre-trial identification procedure.  Petitioner argues that James's identification was unreliable because of the improper and suggestive pre-trial show-up.  He argues that the show-up was suggestive because the victim only saw his assailants with ski masks, he did not provide the police a description, but was able to quickly identify Petitioner's photograph quickly.

The Due Process Clause "prohibits the use of identifications which under the totality of the circumstances are impermissibly suggestive and present an unacceptable risk of irreparable misidentification."  *Carter v. Bell,* 218 F.3d 581, 605 (6th Cir. 2000).  A conviction based on identification testimony must be overturned "whenever the pretrial identification procedure is so 'impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'"  *Id.* (quoting *Simmons v. United States,* 390 U.S. 377, 384 (1968)).  An identification, however,  is admissible if reliable, even if obtained through suggestive means.  *See Neil v. Biggers,* 409 U.S. 188, 196-97 (1972).

The Sixth Circuit follows a two-step analysis in determining whether an identification is admissible.  *United States v. Crozier*, 259 F.3d 503, 510 -511 (6th Cir. 2001) (citing *Ledbetter v. Edwards,* 35 F.3d 1062, 1070 (6th Cir.1994)).  First, the court considers whether the identification procedure was suggestive.  If so, the court then determines whether, under the totality of the circumstances, the identification was nonetheless reliable and therefore admissible. *See id.*  "The five factors to be weighed in determining reliability are: 1) the opportunity of the witness to view the perpetrator during the crime; 2) the witness's degree of attention to the perpetrator; 3) the accuracy of the witness's prior descriptions of the perpetrator; 4) the level of certainty demonstrated by the witness when identifying the suspect; and 5) the length of time between the crime and the identification." *Id.* (citing *Biggers,* 409 U.S. at 199-200).

The magistrate judge correctly noted that Petitioner attacked only the reliability of James's identification, offering no argument or evidence to show that the pre-trial identification *procedure* itself was impermissibly suggestive.  (R&R at 27.)  Petitioner objects, claiming that the totality of the circumstances and evaluating the *Biggers* factors shows that the identification was improper.  This argument, however, ignores the threshold step, identifying what aspect of (or how) the identification procedure was unnecessarily suggestive.  James's in-court identification was subject to cross-examination and counsel argued that the identification was unreliable.  Without evidence as to how the identification procedure was impermissibly suggestive, Petitioner cannot show that this identification violated his constitutional rights entitling him to habeas relief.

### D.  Objection # 4

11

Petitioner also contends that his counsel was ineffective in several ways, depriving him of his Sixth Amendment right to counsel.  Petitioner first argues that his counsel was ineffective for failing to move to suppress a photograph taken after a warrantless felony arrest in his home.  The photograph was later used in a photo line-up in which Petitioner was identified as one of the shooters.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.* at 687.  Second, a petitioner must show that counsel's deficient performance prejudiced petitioner.  A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial. . . ."  *Id.*

The Supreme Court emphasized that, when considering an ineffective assistance of counsel claim, the reviewing court should afford counsel a great deal of deference:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable . . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

12

*Id.* at 689 (internal citations omitted).

The last state court to issue a reasoned opinion regarding the ineffective assistance of counsel claim, the Michigan Court of Appeals, held that Petitioner's attorney was not ineffective for failing to move to suppress the photograph.  The Michigan Court of Appeals concluded that Petitioner "provide[d] no cites to that hearing [on his motion to suppress the identification as unduly suggestive] or other portions of the record to support his additional claim that the police made a nonconsensual entry to his home to make a felony arrest.  Similarly, [Petitioner] has provided no support for his claim that the police lacked probable cause to arrest him, and we have found none in the record."  *Aaron*, 2000 WL 33418993, at *10.

The magistrate judge recommends that the court find this determination reasonable and deny habeas relief.  As noted in the report and recommendation, "there was absolutely no testimony as to the circumstances surrounding petitioner's arrest, *i.e.*, where the arrest occurred and whether, if it was at his home, the officer obtained consent to enter the home."  (R&R at 29.)  The magistrate judge also concluded that this ineffective assistance claim should fail because the subsequent in court identification of Petitioner by the surviving victim would still have been admissible.  *United States v. Crews*, 445 U.S. 463 (1980).  This court agrees because an in-court identification is generally not suppressible as the fruit of an illegal arrest if the in-court identification rests on the witnesses's independent recollection  *Id.* at 472-73.  Here, not only is there an insufficient basis to establish the circumstances of the alleged unlawful arrest, but there is no indication that the surviving victim's identification at trial was tainted by the alleged police misconduct.  *See id*; *United States v. Coleman*, 125

13

F.3d 856, Nos. 96-5771, 96-5779, 1997 WL 618807 (6th Cir. Oct. 6. 1997).  Thus, it was not ineffective assistance for counsel not to file a motion to suppress.

Next, Petitioner claims that his counsel was ineffective for failing to object to hearsay testimony from police officer Samuel Carter.  During direct examination, Carter relayed James's out of court statements that James had made to police describing the crime.  The Michigan Court of Appeals rejected this claim explaining that "part of [Petitioner's] trial counsel's strategy was to highlight the fact that the police focused only on Richey and did not get descriptions of the other two perpetrators from James." *Aaron*, 2000 WL 33418993 at *10.

The court agrees that this determination by the state court was not unreasonable under the governing *Strickland* standard.  Petitioner cannot show prejudice by counsel's failure to object.  Nothing in James's statements conveyed to police identified Petitioner as being involved in the crime and the hearsay testimony was merely cumulative of James's trial testimony.  The court will not second guess this trial strategy on habeas review.  *See Frazier v. Huffman*, 343 F.3d 780, 799 (6th Cir. 2003).

Finally, Petitioner argues that trial counsel was ineffective based on his handling of jury instructions.  He claims that counsel failed to object to the trial court's reasonable doubt instruction and to request a proper instruction on misidentification.  The Michigan Court of Appeals found Petitioner's jury instruction claims to be without merit.

> Aaron's claim regarding the jury instructions is without merit.  The trial court gave the standard instruction on identification after the prosecutor pointed out that it had not been read by the court.  Defendant Aaron argues that his trial counsel should have sought more comprehensive

identification instructions that warned of the grave dangers of misidentification, but does not cite such an instruction.  With regard to the challenged reasonable doubt instruction, this Court held in *People v. Hubbard,* 217 Mich. App 459; 552 N.W.2d 493 (1996), that failure to include "moral certainty" language in the reasonable doubt instruction was not error warranting reversal.  See also *People v. Sammons,* 191 Mich. App 351, 372; 478 N.W.2d 901 (1991) (noting that the instruction read, which was virtually identical to CJI2d 3.2(3), "adequately presented the concept of reasonable doubt to the jury.")  There is no error when jury instructions fairly present to the jury the issues to be tried and sufficiently protect the defendant's rights.  *People v. Caulley,* 197 Mich.App 177, 184; 494 N.W.2d 853 (1992).

*Aaron*, 2000 WL 33418993 at *10.

For the detailed reasons explained in the report and recommendation, the court agrees that trial counsel was not ineffective based on his handling of jury instructions. (*See* R&R at 33-35.)

## IV.  CONCLUSION

IT IS ORDERED that the April 19, 2005 "Report and Recommendation" [Dkt. # 43] is ADOPTED and the petition for writ of habeas corpus [Dkt. # 1] is DENIED.

S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  July 28, 2005

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 28, 2005, by electronic and/or ordinary mail.

S/Lisa G. Teets
Case Manager and Deputy Clerk
(313) 234-5522